IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TNI PACKAGING, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 05 C 2900 |
| ) | Magistrate Judge Nan R. Nolan |
| PERDUE FARMS, INC., ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM OPINION AND ORDER

This patent infringement action is before the Court on Defendant Perdue Farms, Inc.'s Motion to Compel Production of Withheld Documents [36]. For the reasons explained below, Defendant's Motion to Compel [36] is granted to the extent that TNI shall produced Withheld Document Nos. 19-21 with the highlighted portions redacted and denied as to its remainder.

### BACKGROUND

Plaintiff TNI's U.S. Patent No. 5,816,905 (the "'905 patent") claims a method for identifying the cooking process applied to poultry. TNI's president, Jerry Marchese, is the named inventor of the '905 patent. Attorney Jon Nelson prosecuted the '905 patent application on Marchese's behalf. On September 29, 1997, Marchese filed the '905 patent application, and the U.S. Patent Office issued the '905 patent on October 6, 1998. In this lawsuit, TNI claims that Perdue uses TNI's patent method in identifying the cooking process applied to its marinated rotisserie chickens. TNI has refused to produce certain documents claiming attorney-client privilege. Perdue maintains that TNI waived the privilege by producing two 1997 correspondences between Marches and his patent attorney, Nelson. TNI does not dispute that the 1997 letters were voluntarily disclosed. The parties dispute whether the attorney-client privilege applies to the letters. TNI contends that the information

in the letters is not privileged and therefore, no waiver occurred.

## DISCUSSION

Seventh Circuit law governs here. Fort James Corp. v. Solo Cup Co., 412 F.3d 1340, 1346 (Fed. Cir. 2005) (holding the Federal Circuit "applies the law of the regional circuit . . . with respect to questions of attorney-client privilege and waiver of attorney-client privilege."). The attorney-client privilege applies (1) where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived. United States v. White, 950 F.2d 426, 430 (7th Cir. 1991). Not every communication between counsel and client is privileged. In re Grand Jury Investigation, 631 F.2d 17, 19 (3d Cir. 1980). For example, "cover letters for the transfer of confidential documents and descriptions of services provided are generally not privileged, but will be to the extent they describe confidential legal advice." American Motors Corp. v. Great American Surplus Lines Ins. Co., 1988 WL 2788, at *3 (N.D. Ill. Jan. 8, 1988).

Document No. TNI 000148 is a September 11, 1997 letter to Marchese from Nelson containing a request for information about the 1994 copyright date on the TNI brochure and the date of introduction of Marchese's invention. Document No. TNI 000148 is a cover letter to Document Nos. TNI 000149 to TNI 000162. Document Nos. TNI 000149 to TNI 000162 is a draft of the patent application. Document No. TNI 000163 is Marchese's September 23, 1997 response to Nelson's inquiry in Document No. TNI 000148. Document No. TNI 000163 provides information about the date of introduction of Marchese's invention and the invention's description in the patent application.

The Court disagrees with TNI's description of the letters as merely transmittal letters that do not contain legal advice or a request for legal advice. Rather, the communications were between an attorney and his client for legal advice and assistance in preparing the patent application and obtaining the patent. The communications in the two letters include substantive issues, such as the date of introduction of the concept included in the draft patent application; the date by which the patent application must be filed; inconsistencies between literature previously provided to counsel and the date of introduction, as well as a request for comment from the client regarding same; comments regarding the draft assignment papers and the correct owner of the patent; and suggested client changes to the draft application.

Marchese's and Nelson's communications regarding the TNI brochure and the first date of introduction of the invention are protected by the attorney-client privilege. Document No. TNI 000148 does not only provide "public information on when a product was introduced," as TNI contends. Rather, Nelson provides a draft application in response to Marchese's request for legal services in connection with obtaining the patent. Document TNI 000148 states that it is "[i]n response to [Marchese's] recent request." Nelson also requested Marchese's comment regarding the brochure's 1994 copyright and information about the date of introduction of Marchese's invention for the purpose of making a determination concerning when to file the patent application. Marchese's response provided information to Nelson to enable Nelson to give legal advice concerning when to file the patent application. See In re Spalding Worldwide, Inc., 203 F.3d 800, 805 (Fed. Cir. 2000) (holding that invention record which included first date of conception, disclosure to others, and dates of publication constituted a privileged communication where it was provided to an attorney for the purpose of securing legal advice, or legal services, or assistance in

a legal proceeding).

In Document No. TNI 000163, Marchese also provided information to Nelson regarding the description of his invention in the patent application and indicated that the assignment papers were incorrect. Marchese suggested changes to the proposed patent application. The '905 patent does not include the revision suggested by Marchese to Nelson. The suggested changes and the corrected assignment information are privileged because they were provided in confidence to Nelson to enable him to assist Marchese in preparing the patent application. The suggested revision to the patent application was also an implicit request for legal advice on what should be included in the application. The drafts of the patent prosecution materials submitted by Nelson to Marchese (Document Nos. TNI 000148 to TNI 000164) for Marchese's review and comment are also privileged. McCook Metals L.L.C. v. Alcoa Inc., 192 F.R.D. 242, 252-53 (N.D. Ill. 2000) (holding a "patent draft implicitly contains the legal opinion and advice of the attorney regarding the wording of technical specifications, claims, and prior art, and whether an item is included, all of which are necessary to secure a legal claim for the client.").

TNI's claim that Marchese's September 23, 1997 response is not privileged because it does not contain legal advice or a request for legal advice is not persuasive. Marchese's communication was provided primarily for legal advice in order to assist Nelson in the preparation of the patent application and in obtaining the patent. Lawyers obtain information from their clients and provide advice and services to the client based on the information. Documents which provide information or data upon which legal opinions or analyses are based are protected under the privilege. Marchese provided various information to his attorney relating to the preparation and filing of the patent application for the purpose of obtaining the attorney's advice and services. An attorney cannot

-4-

evaluate patentability or prepare a competent patent application without knowing or obtaining relevant information from the inventor. Spalding, 203 F.3d at 806.

The Court rejects TNI's assertion that "the references in the 1997 correspondences to the patent assignment are not privileged because they are merely the transmittal of information intended to be disclosed to a third party, namely, the U.S. Patent Office." TNI's Resp. at 6. Although information transmitted to Nelson might be disclosed to the PTO or contain public information (i.e. information on when a product was introduced), that does not prevent Marchese from having confidential communications with Nelson relating to that information and the manner and method of disclosing that information. "If an attorney-client communication could be discovered if it contained information known to others, then it would be the rare communication that would be protected and, in turn, it would be the rare client who would freely communicate to an attorney." Spalding, 203 F.3d at 806 (quoting Knogo Corp. v. United States, 213 USPQ 936, 941 (Ct.Cl. Trial Div. 1980)); see also Natta v. Zletz, 418 F.2d 633, 637 (7th Cir. 1969) (holding reference to technical or published information in correspondence between in-house and outside counsel did not destroy the privilege).

Having determined that the 1997 documents produced by TNI were covered by the attorney-client privilege, the second issue presented involves the scope of TNI's waiver. "The waiver extends beyond the document initially produced out of concern for fairness, so that a party is prevented from disclosing communications that support its position while simultaneously concealing communications that do not." Ford James Corp., 412 F.3d at 1349; see also Echo Manufacturing LLC v. Honeywell Int't, Inc., 2003 WL 1888988, at *2 (S.D. Ind. April 11, 2003) (stating "[a]t bottom, the scope of waiver is a matter of basic fairness to the opposing party."). "The widely

applied standard for determining the scope of a waiver of attorney-client privilege is that the waiver applies to all other communications relating to the same subject matter." Ford James Corp., 412 F.3d at 1349 (applying Seventh Circuit law). "There is no bright line test for determining what constitutes the subject matter of a waiver, rather courts weigh the circumstances of the disclosure, the nature of the legal advice sought and the prejudice to the parties of permitting or prohibiting further disclosures." Id. at 1349-50; Schofield v. United States Steel Corp., 2005 WL 3159165, at * 3 (N.D. Ind. Nov. 28, 2005) (stating "[w]hile courts have not provided any precise guidance as to the meaning and content of the 'same subject matter' standard, courts follow the general instruction to construe the 'same subject matter' standard narrowly.").

In furtherance of its case, TNI produced a discrete set of otherwise privileged documents for the apparent purpose of establishing the alleged inaccuracy of the 1994 copyright date on the TNI brochure and that the brochure was not prior art. TNI claims that the scope of any waiver "extends only to privileged documents from the 1997 time period concerning the date on which TNI introduced color-coded loops into the marketplace to determine the date the application should be filed." TNI's Resp. at 6. Perdue argues that the subject matter of the disclosed letters and draft patent application extends beyond documents concerning the date on which TNI introduced color-coded loops into the marketplace and includes communications relating to the draft applications disclosing Marchese's alleged invention, communications relating to the introduction of the concept of Marchese's alleged invention, communications relating to the literature Marchese sent to Jon Nelson which relate to the date of introduction of Marchese's color-coded loops, and communications relating to any revisions to Marchese's application papers and drafts of same which relate to the disclosure or concealment of the best mode of practicing the alleged invention. Perdue

argues that to the extent that communications relating to the formal papers corresponding to Marchese's application, communications relating to the ownership of Marchese's alleged invention, and communications relating to the drawings for Marchese's application, relate to the subject matter of TNI's waiver, those documents should be produced. Perdue says that TNI's Withheld Document Nos. 5, 6, 8, 10, 12-16, 17, and 18 potentially fall within this scope. Perdue also questions whether TNI Withheld Document Nos. 2-4, 7, 11, and 31-43 fall within the scope of the waiver. TNI is willing to produce portions of Document Nos. 19, 20, and 21.

The Court has carefully reviewed Withheld Document Nos. 2-21 and 31-43 in camera. In light of the content of the disclosure, the context in which the disclosure was made, and the overriding concern for fairness, the Court finds as follows. Document No. 5 relates to patent maintenance fees and does not relate to the same subject matter of Document Nos. TNI 000148 and TNI 000163. Document Nos. 6, 8-10, and 11 do not directly relate to 1997 draft assignment papers and communications regarding the correct owner of the patent. Moreover, it would be unfair to extend the scope of the waiver to all communications relating to patent assignment and title issues where Perdue does not claim that patent assignment and title are an issue in this litigation. TNI's waiver does not extend to Document Nos. 12-16. These documents relate to the submission of formal drawings to the PTO regarding the patent. Drawings were not discussed in Document Nos. TNI 000148 and TNI 000163. TNI's waiver does not encompass Withheld Document Nos. 17 and 18. The undisclosed letters do not relate to the same subject matter as Document Nos. TNI 000148 and TNI 000163. TNI's Withheld Document Nos. 2-4, 7, and 31-43 are not within the scope of TNI's waiver because they are unrelated to the subject matter of Document Nos. TNI 000148 and

TNI 000163 and to the prosecution of the patent-in-suit.[1]

Given the circumstances of TNI's disclosure and the lack of prejudice to Perdue, fairness does not demand disclosure of everything related to the patent application or everything related to the prosecution of the patent that led to the '905 patent simply because a draft patent application was attached to TNI000148. Perdue has not explained why it is unfair for them to have to defend this action without access to communications relating to submission of formal drawings to the PTO (Docs. 12-16), an Office Action rejecting the claim as unpatentable under 35 U.S.C. 103(a) (Doc. No. 18), and a draft amendment in response to the Office Action (Doc. No. 17). As stated above, these documents are unrelated to the subject matter of Document Nos. TNI 000148 and TNI 000163. Even though these document might arguably be related to subject matter of the draft patent application under a broad construction of waiver, Perdue has not shown the legal relevance of these issues nor does it contend that it is necessary to have communications regarding these issues to prepare an adequate defense. Eco Manufacturing, 2003 WL 1888988, at *3 (stating "in determining the scope of the waiver, the court must keep a close eye on the legal relevance of the

---

[1] Perdue contends that it is unable to determine whether TNI's Withheld Document Nos. 2-4, 7, and 31-43 fall within the scope of the waiver from the general description ("legal advice pertaining to U.S. Pat. No. 5, 816,905") in TNI's privilege log. A more detailed description of the subject matter of the legal advice would have allowed Perdue to better determine whether these documents fell within the scope of the waiver. However, because the Court has viewed the documents in camera, the sufficiency of the privilege log is not at issue. The Court's determination that these documents do not fall within the scope of the subject matter waiver is based on the content of these documents and not the fact that they are outside the 1997 time period. Withheld Document Nos. 2-4 and 31-43 are confidential communications between Marchese and Nelson requesting and providing legal advice regarding possible patent infringement and protection of patent rights. Withheld Document No. 7 is a confidential communication from Nelson to Marchese regarding protection of patent rights and maintenance fees. These documents do not relate to the subject matter of Document Nos. TNI 000148 and TNI 000163 or the draft patent application.

communications that have been disclosed. The goal is to ensure that the opposing party has a fair change to litigate the contested issues for which those communications are relevant."). Perdue does not claim that TNI is using the draft patent application offensively or to its advantage in the litigation. So far as the Court can discern, TNI has not obtained any strategic advantage from disclosure of the draft patent application. The Court therefore concludes that no prejudice will result in the absence of disclosure of Withheld Document Nos. 12-18.

## CONCLUSION

For the reasons stated above, Defendant Perdue Farms, Inc.'s Motion to Compel Production of Withheld Documents [36] is granted in part and denied in part.

E N T E R:

*[signature]*

Nan R. Nolan
United States Magistrate Judge

Dated: February 28, 2006